UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X

KANARES DEANS,

                Plaintiff,

                            **MEMORANDUM**
      - against -                 **DECISION AND ORDER**

ROBERT ERCOLE, Superintendent of      09 Civ. 0056 (BMC)
Greenhaven Correctional Facility,

                Respondent.

---------------------------------------------------------- X

**COGAN**, District Judge.

      Kanares Deans petitions *pro se* pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Petitioner was convicted of robbery in the first degree and sentenced to sixteen years in jail. The Appellate Division, Second Department affirmed the conviction and the New York State Court of Appeals denied leave to appeal on February 26, 2008. For the reasons set forth below, the petition is dismissed.

## BACKGROUND

      On May 6, 2003, Anthony Goichman was robbed in the Far Rockaway section of Queens. He was looking for a parking spot around 10:50 p.m. when he was accosted in the vicinity of Wheatley Street and Augustina Avenue. The assailant, who the jury later found to be petitioner, initially asked Goichman for help with car trouble. Goichman agreed and exited his own car, whereupon the assailant demanded Goichman's money and said he had a gun, indicating a bulge in his waistband. He removed more than $400 from Goichman's pockets, and told him to get back in his car and drive away, threatening to kill him if he ever saw him again. Goichman returned to his car and drove away, then circled the block and parked close to the

scene of the robbery. From his car, Goichman saw his assailant enter a building at 12-90 Augustina Avenue. He then went home, called 911, and reported the crime.

Goichman was met at his home by New York Police Officers Scott Politano and Roosevelt Green. He informed the officers that he saw the perpetrator enter the building at 12-90 Augustina Avenue shortly after robbing him. That same night, the police made an unsuccessful attempt to apprehend the robber at that address. The investigation was assigned to Detective Carl Robinson, who brought Goichman in for an interview. Goichman described the perpetrator as dark-skinned, approximately six feet tall and 200 to 240 pounds, with braids in his hair, and grey hairs in his beard.

Detective Robinson conveyed this information to Officer Green, who indicated that he suspected petitioner, who he knew from the area of the crime and believed fit the description, could be the perpetrator. Robinson pulled the petitioner's file and entered it into the Police Information Management System (PIMS) computer, which produced a six-person photo array depicting individuals of similar characteristics, gender, and race to the petitioner. He presented the photo array to Goichman and asked him whether he recognized anyone. Goichman identified the petitioner as the robber.

The police returned to 12-90 Augustine Avenue on May 8, 2003 and arrested petitioner when he walked out of the building. That evening, petitioner was placed in a line-up, from which Goichman again identified him as the robber. Petitioner was taken into custody and charged with Robbery in the First Degree.

Petitioner's case was assigned to Public Defender Joseph DiFlumeri. A hearing was held before Honorable Joseph A. Grosso, Supreme Court, Queens County, on petitioner's motion to

suppress the identification testimony as being unduly suggestive. See Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926 (1967). Petitioner's motion to suppress the evidence was denied. Judge Grosso found that the photo array was not unduly suggestive.

The case then proceeded to trial. The prosecution presented testimony from the victim, Officers Politano, Green, and Detective Robinson. The victim testified in detail as to his recollection of the crime and withstood a vigorous cross-examination by the defense. The police witnesses described the process of identifying the petitioner through the line-up and photo array procedures. They also corroborated the victim's testimony as to the location of the scene of the crime, and provided an account of the arrest of petitioner. Defense counsel called no witnesses.

The jury convicted petitioner of robbery in the first degree on April 19, 2004. He was sentenced as a predicate violent felony offender to sixteen years in prison. Petitioner moved for an order vacating the judgment pursuant to Criminal Procedure Law § 440.10; the motion was denied. Petitioner appealed his conviction, and the Appellate Division unanimously affirmed. People v. Deans, 44 A.D.3d 681, 843 N.Y.S.2d 176 (2d Dep't 2007). The Appellate Division denied petitioner's motion for leave to appeal to the Court of Appeals. The Court of Appeals also denied petitioner's motion for leave to appeal on February 26, 2008. People v. Deans, 10 N.Y.3d 763, 854 N.Y.S.2d 325 (Table) (2008). His state court remedies thus exhausted, petitioner *pro se* timely filed the instant § 2254 petition for a writ of habeas corpus on January 12, 2009.

## DISCUSSION

A § 2254 petition for a writ of habeas corpus may be granted to a state prisoner on a claim that was "adjudicated on the merits" in state court only if the adjudication: "(1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006) (quoting 28 U.S.C. § 2254(d)). A legal conclusion by a state court is contrary to clearly established federal law if it "applies a rule that contradicts the governing law" or if it confronts "a set of facts that are materially indistinguishable from a decision" of the Supreme Court yet arrives at a result different from that precedent. Price v. Vincent, 538 U.S. 634, 640, 123 S.Ct. 1848 (2003). A decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495 (2000). Furthermore, a "federal habeas court may not issue the writ simply because that court concludes [that the state court] applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A court reviewing a habeas petition shall presume "a determination of a factual issue made by a State court . . . to be correct, and the petitioner 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Wood v. Allen, 130 S. Ct. 841, 845 (2010) (quoting 28 U.S.C. § 2254(e)(1)). A factual determination by a state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance. Even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." Id. at 489.

Petitioner has advanced four grounds for habeas relief: 1) an excused juror improperly participated in rendering the verdict; 2) he received ineffective assistance of counsel; 3) he was denied Brady and Rosario material; and, 4) the trial court abused its discretion by failing to hold a Gomberg hearing.[1]

I.  **Conviction by Fewer than 12 Jurors**

Courts are to construe pleadings submitted by *pro se* litigants liberally, reading such submissions to raise the strongest arguments they suggest. Bertin v. U.S., 478 F.3d 489, 491 (2d Cir. 2007). I therefore construe petitioner's first argument to be that his conviction was improperly rendered by eleven jurors because a previously excused juror remained on the jury and joined in rendering the verdict. According to the trial transcript, when the jury was polled after it rendered its verdict, the court asked, "Ms. Fenster, is that your verdict?" to which juror number twelve replied, "Yes." Fenster, however, was dismissed before the trial began. The morning before opening arguments, Fenster met with the judge in his chambers, in the presence of the Assistant District Attorney and defense counsel. The transcript of that meeting shows Fenster was dismissed because she was unable to serve. The record is clear: alternate juror number one, Coisha Steele, then took Fenster's place as juror number twelve. Petitioner claims that Fenster improperly remained on the jury and participated as it discharged its duties, even after being replaced. Respondent offers the more realistic theory that a typographical error in the transcript created the appearance that this situation occurred. The notion that the dismissed juror somehow made her way back into the jury box and supplanted her replacement -- without that fact appearing anywhere else in the record -- is not plausible.

---

[1] A fifth ground, that the photographic array and line-up were unduly suggestive, was dismissed by this Court in a previous Order dated May 14, 2009.

Yet even if the conviction was rendered by only eleven jurors, clearly established Supreme Court precedent maintains that the Constitution does not require twelve jurors for a conviction. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893 (1970); see also U.S. v. Stratton, 779 F.2d 820 (2d Cir. 1985) (holding that a twelfth juror may be dismissed during deliberations "for just cause"). The Supreme Court has also found that a majority verdict of nine out of twelve jurors is acceptable due process for a conviction. Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620 (1972). Therefore, even supposing petitioner's incredible version of the facts is true, polling of the dismissed juror would be harmless error, and not a contradiction of clearly established Supreme Court precedent. See Price v. Vincent, 538 U.S. at 640.

## II.    Ineffective Assistance of Counsel

Petitioner next argues that his right to effective assistance of counsel guaranteed by the Sixth Amendment was violated, and he offers a litany of examples of his counsel's purported ineffectiveness. All are without merit, and most are simply attempts to use the benefit of hindsight to offer an illegitimate reason for his conviction.

Some of the allegations are plainly false. For example, petitioner claims that his counsel, Mr. DiFlumeri, did not object to the People's failure to produce a recording of the victim's 911 call, which might have been used to cross-examine the victim at trial. Defense counsel did, in fact, raise this objection, and was granted an adverse inference charge to the jury as a result. Petitioner further alleges that his counsel failed to raise a Fourth Amendment objection to the warrantless search of his residence. Defense counsel raised this precise objection at the Wade evidentiary hearing held on November 25, 2003.

Other claims are simply unsubstantiated. Petitioner first maintains that his counsel had a conflict of interest that rendered him ineffective. Specifically, he states that defense counsel previously represented the partner of the arresting officer in his case.

For an allegation of conflict of interest, counsel is deemed ineffective if he had either: (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance. U.S. v. Leslie, 103 F.3d 1093, 1098 (2d Cir. 1997). There is an actual conflict when the attorney's current representation is impaired by the loyalty he owes a former client. Id.

Petitioner has not shown that there was an actual conflict of interest, or that his counsel's advocacy was adversely affected by the alleged conflict. The record reflects that defense counsel had previously represented Detective Charles Fletcher, the partner of the arresting officer in the case, in an arraignment for felony assault unrelated to this case and at two court appearances after the arraignment. He was then replaced by a retained attorney, to whom he delivered his files, thus ending his representation. Detective Fletcher initially appeared on the People's witness list. When defense counsel alerted the court to the fact of this prior representation, the prosecution indicated that it did not intend to have Detective Fletcher testify and removed him from the witness list. Defense counsel no longer faced the possibility that he would need to cross-examine his former client. Even assuming counsel's ability to cross-examine the witness could have been impaired due to his prior representation in a brief, unrelated matter, that possibility of an actual conflict was eliminated by the prosecution's decision. Petitioner asserts that the withdrawal of the witness was in fact the result of a conspiracy between his counsel and the prosecution to keep Detective Fletcher from testifying to exculpatory evidence, but alleges no facts to support the existence of any such conspiracy.

The remaining ineffectiveness claims relate to the defense counsel's trial strategy. Petitioner asserts that his counsel was so ineffective as to deny him his constitutional right to representation because he failed to: 1) cross-examine the victim at trial with evidence of an inconsistent prior identification; 2) cross-examine the arresting officer with evidence that would impeach the victim; 3) object to the prosecution's evidence tampering; or 4) call two exculpatory witnesses and an alibi witness.

### A. Legal Standard

A Sixth Amendment ineffective assistance of counsel claim invokes federal law that has been "clearly established" by the Supreme Court within the meaning of AEDPA, in light of the decision in Strickland v. Washington. Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009). To prevail on an ineffective assistance of counsel claim, petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)). In the habeas context, petitioner must also show that the state court's application of Strickland "was not merely incorrect, but objectively unreasonable." Palacios, 589 F.3d at 561–62. In evaluating a lawyer's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and be watchful to eliminate the distorting effects of hindsight." Id. Reasonable decisions by defense counsel "that fall squarely within the ambit of trial strategy . . . cannot support an ineffective assistance claim." U.S. v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992). Generally, decisions about which witnesses to call and to what extent to engage in cross-examination are strategic in nature.

Id. Choices about what items to offer into evidence are also a matter of strategy. U.S. v. Smith, 198 F.3d 377, 386 (2d Cir. 1999).

## B. Objectively Reasonable Performance

All of the remaining instances of alleged ineffectiveness fall squarely within "the ambit of trial strategy." Eisen, 974 F.2d at 265. In the first instance, petitioner must show that these trial decisions were objectively unreasonable.

### 1. Cross-Examination of the Victim

Petitioner claims that his counsel's cross-examination of the victim was incompetent. He argues that defense counsel should have introduced the police report from the night of the crime into evidence because it could have been used to impeach the victim's testimony. The description of the perpetrator given in the complaint report differed slightly from the actual appearance of the petitioner: a disparity of 20 pounds in weight and one inch in height on a 6'0", 240 pound frame. Defense counsel did cross-examine the victim vigorously, calling into question his memory of the robbery's location, casting doubt on his account of the sequence of events, and attempting to impeach his character. Defense counsel's emphasis of certain points at cross-examination rather than those the petitioner now favors in hindsight was still an objectively reasonable strategic decision. See Lynn v. Bliden, 443 F.3d 238 (2d Cir. 2006) (finding failure to cross-examine witness about specific prior statement to police did not render his representation ineffective when attorney presented a vigorous cross-examination attacking witness's credibility). A layman's estimate of weight that is off by less than 10%, and height that is off by 1 inch, based on a street encounter under agitated circumstances, makes poor fodder

for cross-examination. At the very least, it was not constitutional error for trial counsel to view it that way.

### 2. Cross-Examination of the Arresting Officer

Petitioner next asserts that his counsel should have cross-examined the arresting officer, Detective Robinson, about his testimony at the Wade hearing that supposedly would have discredited the victim's testimony. Detective Robinson testified at the hearing that the victim did not know the identity of the robber. It is clear from the context in the record that at the hearing Detective Robinson was referring to the fact that the victim did not know his assailant's name. That testimony was entirely consistent with the victim's trial testimony, in which he described the perpetrator but never claimed to know his name. Counsel's cross-examination of this consistent testimony, in reality, would have only rendered the prosecution's witnesses more credible.

### 3. Objection to Arrest Photo

Petitioner further argues that his counsel should have objected to his arrest photo when it was offered into evidence on the grounds that it was deliberately altered by the prosecution. Petitioner offers no evidence of such alteration, and none exists in the record. Counsel's decision not to accuse the prosecution of tampering with evidence without factual foundation was objectively reasonable. See United States v. Diaz, 176 F.3d 52, 113 (2d Cir.1999) (finding counsel not constitutionally ineffective for failure to object to admissible evidence).

### 4. Defense Witnesses

Petitioner's argument concerning defense counsel's failure to call witnesses, unlike his other claims, is at least colorable. Defense counsel did not call any witnesses. Petitioner argues that this decision was a failure of competence that rendered his representation constitutionally ineffective. Specifically, petitioner argues that his counsel should have called Detective Fletcher, Darryl Stovall (his landlord), and Shatava Barnes (his girlfriend).

Defense counsel's decision whether to call any witnesses at all is a matter of trial strategy. U.S. v. Smith, 198 F.3d 377 (2d Cir. 1999). The decision "whether to call specific witnesses -- even ones that might offer exculpatory evidence -- is ordinarily not viewed as a lapse in professional representation." U.S. v. Best, 219 F.3d 192, 201 (2d Cir. 2000).

According to petitioner, Detective Fletcher would have testified that the victim knew petitioner's girlfriend before the robbery. Petitioner does not explain why this testimony would have been exculpatory, or how Detective Fletcher was the only witness to hold this information when his partner, who did testify, conducted the investigation and was the arresting officer. Similarly, petitioner claims that Mr. Stovall "held information" that was exculpatory, without identifying the content of the information. Counsel's decision not to call either of these witnesses was objectively reasonable, as neither witness could have aided the defense. See, e.g., U.S. v. Vargas, 920 F.2d 167 (2d Cir. 1990) (failure to call witnesses whose proffered testimony related only to collateral matters did not establish ineffective assistance of counsel).

Petitioner next claims his girlfriend, Shatava Barnes, would have given him an alibi had she testified. He claims that his counsel visited Ms. Barnes and interviewed her, and that she said she would be willing to testify. Nevertheless, petitioner claims that his counsel "failed to

submit a subpoena that would produce the witness at trial." Petitioner alleges that when his counsel was asked why he was calling no witnesses, he replied that Ms. Barnes could not be located at her last known address, and he had no knowledge of her whereabouts. According to petitioner, this was a lie: counsel knew that Ms. Barnes was in custody at that time. For his part, defense counsel stated at petitioner's sentencing hearing that he made the decision not to call Ms. Barnes for "strategy reasons."

Counsel may have based his strategic decision on any of several objectively reasonable considerations. Upon interviewing the witness, he may have concluded that she was not credible, or that her testimony would have undermined the defense. See, e.g., Wright v. Conway, Nos. 09-CV-2967, 08-CV-1426, 2009 WL 3273901, at *12 (E.D.N.Y. Oct. 9, 2009). He may have concluded that, as the defendant's girlfriend, Ms. Barnes was likely to be considered biased by the jury because of their relationship. See, e.g., Chin v. U.S., No. 08-CV-1735, 2009 WL 3380725, at *9 (E.D.N.Y. Oct. 19, 2009). Petitioner has offered no evidence to support his assertion that the witness would have testified, nor has he explained what alibi she would have provided. Without any credible evidence of his supposed alibi, or that his "counsel's strategy arose from the vagaries of ignorance, inattention, or ineptitude," Cox v. Donnelly, 387 F.3d 193, 201 (2d Cir. 2004), petitioner has not shown that counsel's decision not to call the witness was objectively unreasonable. See, e.g., Dupont v. U.S., 224 Fed. Appx. 80 (2d Cir. 2007) (finding no basis for ineffectiveness claim based on counsel's decision not to call alibi witness where § 2255 petitioner presented no credible evidence of the existence of an alibi); see also Demosthene v. Miller, No. 98-2592, 1999 US App. Lexis 12104 (2d Cir. 1999) (petitioner's ineffective assistance of counsel claim failed when he offered no evidence to support his

assertion that the witnesses' testimony would have been exculpatory other than his own conclusory opinion).

Even assuming any of the strategic decisions by defense counsel met the "objectively unreasonable" threshold, petitioner must still show that there was "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Palacios v. Burge, 589 F.3d at 561 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 694). A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 694). This showing can be made "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Id.

Regarding the failure to call petitioner's purported alibi witness, petitioner has offered scant evidence of a reasonable probability that the testimony of Ms. Barnes would have affected the outcome of the trial. Although he claims she was "willing" to testify as an alibi witness, he does not explain what this supposed alibi was. The only fact Ms. Barnes might have testified to alleged by petitioner is that she and the victim knew each other prior to the crime. This fact and a hypothetical, unspecified alibi are not enough to undermine the Court's confidence in the outcome of the trial. See U.S. v. Vargas, 920 F.2d at 168–9 (conclusory allegations about the testimony of an uncalled witness insufficient to demonstrate prejudice); Wright v. Conway, 2009 WL 3273901, at *12 (petitioner's failure to provide an affidavit from uncalled witness specifying testimony resulted in failure to show requisite prejudice).

As for the remaining instances of purported ineffectiveness, petitioner has made no showing of prejudice. The supposedly impeachable inconsistencies in the victim's testimony

were slight, and would have done little to undermine that witness, let alone the outcome of the trial. The allegedly altered arrest photo was not a critical piece of evidence for the prosecution, which submitted additional photographs of petitioner from the lineup. The other uncalled witnesses would have offered irrelevant or unspecified testimony. None of these instances of allegedly ineffective representation amounts to proof that there was a reasonable probability that the outcome of the trial would have differed had counsel used petitioner's preferred approach. Even taking all of the purported errors together, the possibility of a different outcome is remote.

Petitioner's ineffective assistance of counsel claim is without merit.

### III. Denial of *Brady* and *Rosario* Material

Petitioner claims that his constitutional due process rights were violated when he was denied Brady and Rosario material, a recording of the victim's 911 call, which could have been used to impeach the testimony of the victim. The recording in question was erased, and petitioner was instead given a SPRINT report summarizing the contents of the call.[2] Petitioner suffered minimal prejudice as a result of this happenstance because sufficient remedial measures were taken by the trial court to eliminate any possible prejudice.

According to the rule set forth in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), the government has an obligation to "disclose material evidence favorable to a criminal defendant." United States v. Orena, 145 F.3d 551, 557 (2d Cir. 1998). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. Impeachment evidence "may be considered to be material where the witness in question supplied the only evidence linking the defendant to the

---

[2] Petitioner's previous motion to expand the record to include the 911 recording was denied by Order dated May 21, 2009. Respondent's submission made clear that the recording had been erased.

crime." U.S. v. Avellino, 136 F.3d 249, 257 (2d Cir. 1998). Undisclosed impeachment evidence is not material when "although possibly useful to the defense, it is not likely to have changed the verdict." Id.

Petitioner alleges that the description given by the victim on the 911 call differed from the description given to the police when the victim was interviewed. Because the prosecution relied heavily on the victim's eyewitness testimony, petitioner contends that the 911 call would have been valuable impeachment material. The victim's testimony was the only evidence linking petitioner to the crime, therefore the impeachment evidence may be considered material. See id. at 257. However, the impeachment value of that evidence is negligible. Petitioner argues that the victim's 911 call identified two black males present at the scene of the crime whereas the witness told the police in person that a black male and a black female were present at the scene. However, the SPRINT report gave defense counsel the same opportunity to impeach the witness's recollection of events as petitioner alleges the 911 would have, as it also indicated a report of two black males at the scene of the crime. Petitioner does not identify any other impeachment evidence not in the SPRINT report that the recording would have provided. The recording is not likely to have changed the verdict, as it apparently supplied no additional information with which to impeach the victim's testimony. See id. at 257. Therefore, petitioner has failed to show that he was in fact denied any "material" evidence from the 911 recording, and cannot establish a violation of his Brady right to the disclosure of impeachment evidence.

Moreover, the application of a proper sanction for violation of the Rosario rule ensured that the destruction of the 911 tape did not prejudice petitioner. The Rosario rule is a New York state right to discovery of prior statements of witnesses for purposes of impeachment. People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961). When the Rule is violated by the destruction

of evidence in the possession of the prosecution or its agents, New York courts must "fashion an appropriate response," the "overriding concern" of which is to "eliminate any prejudice to the defendant while protecting the interests of society." People v. Kelly, 62 N.Y.2d 516, 520, 478 N.Y.S. 834 (1984). In this case, the trial court granted a permissive adverse inference charge as a remedy to any prejudice created by the defense being forced to make do with a SPRINT report rather than the actual recording of the 911 call. The charge stated:

> Under our law the People are required to provide the defendant with certain police documents and 911 tapes. For that reason the law permits, but does not require, you to draw any adverse inference from its nonproduction. That is, the law permits you to infer if you believe it is proper, to do so, that the 911 tape if produced would somehow be unfavorable to the People. The decision to draw any inference is completely up to you.

This charge was consistent with New York precedent, even generous to the defense, and petitioner has made no further showing of prejudice that suggests his due process rights were infringed. See People v. Vasquez, 245 A.D.2d 178, 666 N.Y.S.2d 181 (1st Dep't 1997) (adverse inference charge sufficient absent bad faith by prosecution and proof that evidence supported misidentification defense); People v. Hernandez, 25 A.D.3d 566, 808 N.Y.S.2d 411, (2d Dep't 2006) (court has discretion to giver permissive or mandatory adverse inference charge depending on degree of prejudice to defendant); People v. Mengstie, 260 A.D.2d 264, 690 N.Y.S.2d 11 (1st Dep't 1999) (destruction of 911 tapes did not warrant adverse inference charge in robbery prosecution, where there was no lack of diligence by the People and the defendant was not prejudiced).

Thus, Petitioner's due process claim is without merit.

## IV. Abuse of Discretion

Finally, petitioner's assertion that the trial court abused its discretion by failing to conduct a Gomberg hearing to evaluate defense counsel's purported conflict of interest is simply wrong. A Gomberg hearing is a procedure mandated under state law to determine whether an attorney representing two or more co-defendants should continue in the co-representation when the defendants' interests come into conflict. People v. Gomberg, 38 N.Y.2d 307, 379 N.Y.S.2d 769 (1975). Defense counsel had no conflict of interest. Petitioner was the only defendant in his prosecution. The claim therefore fails.

## CONCLUSION

For the foregoing reasons, petitioner's habeas corpus petition is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. A certificate of appealability shall not issue. 28 U.S.C. § 2253. I certify that any appeal from this Order would not be taken in good faith. See 28 U.S.C. § 1915(a); Coppedge v. United States, 369 U.S. 438, 444, 82 S.Ct. 917 (1962).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
March 15, 2010